This is a suit for damages alleged to have arisen from false representations made by appellant to appellee in regard to a well on a certain tract of land afterward sold by appellant to appellee. It was alleged that appellant represented that the tract of land had on it a good well that always had 10 to 12 feet of water in it, and that the water therein was amply sufficient to water 75 head of cattle; that, acting on said representations, appellee paid appellant $800 in cash, and executed to him two promissory notes, one for $700, due on June 10, 1913, the other for $4,600, due on October 10, 1917, each bearing 10 per cent. interest; that when appellee moved on said land, with his family, he found the well practically dry and of no use or benefit. Appellee further alleged that he had paid $61 an acre for the land, and that its real value was only $35, and he prayed for judgment for an excess of $26 an acre, amounting in the aggregate to $2,600. The cause was tried on a second amended petition and a third amended answer; neither of them indicating when the original petition and original answer were filed. Appellant denied the allegations of the petition, and alleged that the $700 note became due on June 10, 1913; that he demanded payment of the same, which was refused; that it was provided in the notes, if the first note was not paid at maturity, or the interest not paid on either of them, appellant should have the right to declare them both due and payable; that appellant, upon default in payment of the first note, declared the other note due and placed them in the hands of an attorney; that, after giving appellee reasonable time in which to pay said notes, appellant elected to rescind said sale and tendered back the notes to appellee; that appellee failed and refused to pay said notes; and appellant prayed for a judgment for the title and possession of the land, and for the cancellation of the notes.
The cause was submitted to a jury on special issues, to which they answered that appellant had made the false representations as to the well; that appellee believed them to be true, and would not have purchased the land if such representations had not been made; that they were material; that the fair market value of the land at time of the sale was $40 an acre; and that the rental value of the land from July 23, 1913, to date of judgment was $100. In addition to the answers of the jury, the court recites in the judgment the finding, upon uncontroverted evidence, that on October 10, 1912, appellant conveyed a certain tract of 100 acres of land, therein described, to appellee; that appellee paid thereon $800 in cash, and at the same time executed two promissory notes, one for $700, due on June 10, 1913, and the other for $4,600, due on October 10, 1917, reserving in the deed and each note a vendor's lien to secure payment of the notes, and giving the option to the holder to mature both notes upon default of payment of the first note or any installment of interest; that appellee defaulted in the payment of the $700 note, and appellant elected to rescind the sale. Upon the answers of the jury and the findings of the court, the court rendered judgment for appellee for $2,000, and for appellant for the land and a cancellation of the two notes.
Under the answers of the jury the damages amounted to $21 an acre, amounting in the aggregate to $2,100, and it is evident that the sum found by the jury was reduced by the sum of $100 found as rent due by appellee. The jury found the allegations of fraud to be true, and yet the judgment granted a rescission of the contract, not giving the fraudulent representations any force or effect on the question of rescission. From the judgment of the court, both parties appealed, and the case is before this court on assignments of error by appellant and cross-assignments by appellee; the contention of appellant being that judgment should have been rendered in his favor for the land, and in favor of appellee for $800, amount of cash paid on the land, less the $100 rent for the period after an election to rescind was made, and the contention of appellee is that appellee should have had judgment for $2,100, to be applied on the two notes, and that the balance on the $4,600 be declared to become due on October 10, 1917.
When appellee discovered the fraud of appellant in connection with the land, he had the election between two remedies, namely: To ask for a rescission of the contract of sale, for the repayment of the purchase money he had paid, and a cancellation of his notes, or to retain the land and sue for the damages that he had suffered by reason of the misrepresentations of appellant. Bigelow on Fraud, p. 184; Grabenheimer v. Blum, 63 Tex. 369; Du Bois v. Rooney, 82 Tex. 173, 17 S.W. 528.
There can be no doubt that if appellant, as found by the jury, made fraudulent representations to appellee as to the condition of the well, that appellee could sue for and recover the damages arising from such fraud. Pendarvis v. Gray, 41 Tex. 326.
That proposition is not one about *Page 1106 
which there can be any controversy, and, without complication with the cross-action for forfeiture Instituted by appellant, the matter would be plain and simple. Putting aside that action for rescission of the land contract, appellee had the right to recover the damages and have such damages placed as a credit on the purchase money yet unpaid.
If appellant had instituted suit on the notes, and appellee had answered, setting up the facts upon which he based this suit for damages, It is clear that he could, upon proof of the same, have offset his damages against the amount of the notes. If that be true in a court of law, would it not be true in a court of equity into which a vendor enters to rescind the contract of sale? In that court, where justice presides, and conscience is the standard, no one can come with unclean hands and Invoke aid of its decrees. In that court rescissions are not favored, and no forfeiture will be permitted, if it appears that the default upon which the rescission or forfeiture is asked was brought about through any act of the plaintiff. The mere failure to pay the purchase money justifies a rescission; but it must appear that such default was not caused or induced by the act of the party seeking the rescission. Warvelle on Vendors, c. 30, § 6, p. 822; Scarborough v. Arrant, 25 Tex. 129; Thomas v. Beaton, 25 Tex.Supp. 318; Buckingham v. Thompson (Civ. App.) 135 S.W. 656; Wallace v. McLaughlin, 57 Ill. 53.
In this case the evidence showed fraudulent misrepresentations upon the part of appellant which induced the sale, and that the default in the payment of the $700 note was caused directly by such misrepresentations. It was by reason of the fraudulent actions and representations that the note was not paid, because appellee not only had the right to have the damages he had suffered credited on the purchase money notes, but that they should have been used to liquidate the debt that became due while the suit was pending. It would be inequitable and unjust to permit a rescission under such circumstances. Moore v. Giesecke, 76 Tex. 543,13 S.W. 290.
"Whatever be the nature of the plaintiff's demand and of the relief which he seeks, if his claim grows out of, or depends upon, or is inseparably connected with, his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." Pomeroy, Eq. § 401.
The rule stated by Story, in his Equity Jurisprudence, vol. 1, § 779, and approved by the Supreme Court in Roberts v. Lovejoy, 60 Tex. 253, is the one to govern in cases like this, and is as follows:
"The general rule * * * in all such cases is that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate."
That rule is one supported by justice and reason. As said by Waterman, in his work on Specific Performance:
"The purchaser will be entitled to compensation at any time before the conveyance and the payment of the whole purchase money as to a matter which has previously arisen either before or after the contract."
In the case of Austin v. Ewell, 25 Tex.Supp. 403, cited and approved in the Roberts-Lovejoy Case, herein cited, the court said:
"The case here presented is one in which the vendor is the party who first places himself in the wrong. When it was ascertained that the house, which was supposed to be on the land conveyed, was not in fact on the land, it was the duty of the vendor to have allowed the proper deduction from the purchase money which remained to be paid. His refusal to do this placed him in the wrong. * * * The original contract of sale by Ewell to Austin and Weatherby ought to have been enforced; the proper deduction being made from the purchase money on account of the house in which Ewell lived at the time of the sale."
That was a suit to recover the land by the vendor. In the present suit appellant had represented that a certain well was permanent with water at a fixed depth of 10 or 12 feet, which representation was not true, and appellant should have allowed a proper deduction from the purchase price to cover the lack of the well. He did not do so and thereby placed himself in the wrong, caused the default in payment of the note, and cannot ask a rescission of the contract of sale. Watson v. Baker,71 Tex. 739, 9 S.W. 867; Hazzard v. Morrison (Civ. App.) 130 S.W. 244.
The law did not require appellee to pay the note that became due during the pendency of his suit, and it was not a default on his part to refuse such payment. Appellant could not take advantage of a state of circumstances created by his own fraudulent conduct to rescind the contract and retake the land. Appellee had the right to a specific performance of the contract with a deduction from the purchase price agreed to be paid for the land. It would be unconscionable to permit appellant to escape the result of his fraudulent representations by rescinding the sale and retaking the land. As said by this court in Buckingham v. Thompson, herein cited:
"If it should be determined that plaintiff was guilty of false representations concerning the land inducing the contract, we think plaintiff would have had no right to retake possession by summary process."
The jury have found that the fraud of appellant induced the contract, and appellant cannot be permitted to rescind the contract and retake the property.
Appellee had the right to have the contract specifically performed, and to recover a rebate on the purchase money that would reduce the purchase price to the proper value, and this equitable relief did not depend upon the manner and form in which the suit for specific performance and the cross-action for rescission were instituted. Whether the vendee is entitled to equitable relief is a proper *Page 1107 
subject of inquiry in every case. Moore v. Giesecke, herein cited.
In order to rescind the contract and recover the land, there must be a default upon the part of the vendee, and it is permissible in such a suit for the vendee to show that he was not at fault, but that the vendor is in fault on account of failure to comply with the terms of the contract of sale. Kauffman v. Brown, 83 Tex. 41, 18 S.W. 425; McCord v. Hames,38 Tex. Civ. App. 239, 85 S.W. 504.
If appellee had failed to make out a case of fraudulent representations on the part of appellant, then the right to a rescission might have accrued to appellant; but, when fraud was found by the jury which induced the execution of the contract of sale, appellant failed to show equities entitling him to a rescission and retaking of the land, and appellee should, under the verdict of the jury, have recovered the amount of the excess in value of the land, and such sum should have been applied as a payment first on the $700 note and then the balance on the $4,600 note as of date of the contract of sale, the balance of said note to become due according to the face and tenor thereof.
The judgment is reversed, and judgment here rendered that appellant take nothing by his suit, and in favor of appellee as herein indicated, together with all costs in this behalf expended.